UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COLIN COMER,

Plaintiff,

v.                                            Case No. 2:24-cv-468

HAGERTY, INC.,

Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL
ARBITRATION OR TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD ..................................................................................................... 2

BACKGROUND ............................................................................................................. 5

ARGUMENT .................................................................................................................. 10

I.      THE AGREEMENTS THAT DEFENDANT RELIES ON TO SEEK DISMISSAL
ARE OUTSIDE DOCUMENTS THAT ARE INAPPLICABLE TO THIS CASE
AND DO NOT BAR PLAINTIFF'S CLAIMS................................................................. 10

      a.    The Defendant Has Failed to Show That Michigan Law Should Apply. ............. 10

      b.    The Employment Contracts Represent Matters Outside the Pleadings and
Should Not be Considered as Part of the Motion to Dismiss. ............................. 11

      c.    The Severance Agreement's Release Provision Expressly Does Not Apply to
Mr. Comer's Claims. .......................................................................................... 13

      d.    The Confidentiality Agreement Provision Does Not Apply to Mr. Comer's
Claims. ............................................................................................................... 17

      e.    The Rights Agreement Reaffirms Mr. Comer's Right of Publicity. .................... 19

      f.    Even If Considered, The Employment Contracts Have No Bearing on
Mr. Comer's Other Claims. ................................................................................ 21

II.    HAGERTY FAILED TO STATE A BASIS FOR COMPELLING ARBITRATION..... 22

III.   HAGERTY FAILED TO SHOW THAT A TRANSFER OF VENUE IS
WARRANTED. ............................................................................................................. 23

CONCLUSION ............................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.D. v. Credit One Bank, N.A.*,
885 F.3d 1054, 1060 (7th Cir. 2017) ................................................................ 4, 22

*Aeroground, Inc. v. CenterPoint Props. Tr.*,
738 F.3d 810, 813 (7th Cir. 2013) ........................................................................ 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ........................................................................................ 3

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687, 690 (7th Cir. 2012) ........................................................................ 12

*Cerabio LLC v. Wright Med. Tech., Inc.*,
410 F.3d 981, 987 (7th Cir. 2005) ........................................................................ 10

*Coffey v. Van Dorn Iron Works*,
796 F.2d 217, 220 (7th Cir. 1986) .............................................................. 5, 24, 25

*Drinkwater v. Am. Family Mut. Ins.*,
2006 WI 56, ¶ 40, 290 Wis. 2d 642, 714 N.W.2d 568 ................................. 10, 11

*Excel Homes, Inc. v. Locricchio*,
7 F. Supp. 3d 706, 710 (E.D. Mich. 2014) ............................................................ 4

*Facebook, Inc. v. Teachbook.com, LLC*,
819 F. Supp. 2d 764, 770 (N.D. Ill. 2011) ........................................................... 12

*Frederick v. Simmons Airlines, Inc.*,
144 F.3d 500, 503 (7th Cir. 1998) ........................................................................ 10

*General Elec. Cap. Corp., v. Lease Resol. Corp.*,
128 F.3d 1074, 1080 (7th Cir. 1997) .................................................................. 3, 4

*Gumm v. Molinaroli*,
569 F. Supp. 3d 806, 827 (E.D. Wis. 2021) (Pepper, J.) ...................................... 12

*Gunn v. Cont'l Cas. Co.*,
968 F.3d 802, 808 (7th Cir. 2020) ...................................................................... 2, 3

*Gupta v. Morgan Stanley Smith Barney, LLC*,
934 F.3d 705, 710 (7th Cir. 2019) .......................................................................... 4

*Illumination Mgmt. Sols., Inc. v. Ruud*,
No. 10-C-1120, 2012 WL 4069315, at *9 (E.D. Wis. Sept. 14, 2012) (Randa, J.) ................... 3

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930, 935 (7th Cir. 2012) .......................................................................... 3

*Innovaport, LLC v. Target Corp.*,
678 F. Supp. 3d 1060, 1063 (W.D. Wis. 2023) .......................................... 5, 23, 24

*Kyocera Corp. v. Hemlock Semiconductor, LLC*,
886 N.W. 2d 445 (Mich. Ct. App. 2015) .............................................................. 16

*Levenstein v. Salafsky*,
164 F.3d 345, 347 (7th Cir. 1998) ........................................................................ 12

*Lynn Props., LLC v. JTH Tax Inc.*,
No. 21-cv-305-wmc, 2022 WL 5505965, at *3 (W.D. Wis. May 5, 2022) .............. 12

*NCR Corp. v. Transport Ins. Co.*,
2012 WI App 108, ¶ 14, 344 Wis. 2d 494, 823 N.W.2d 532 ................................ 11

ii

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*,
   910 F.3d 293, 299 (7th Cir. 2018) ........................................................... 3

*TAS Distrib. Co. v. Cummins Engine Co.*,
   491 F.3d 625, 630 (7th Cir. 2007) ......................................................... 22

*Thiele v. N. Mut. Ins.*,
   36 F. Supp. 2d 852, 854 (E.D. Wis. 1999) (Goodstein, Mag. J.) ..................... 10, 11

*Town Bank v. City Real Estate Dev., LLC*,
   2010 WI 134, 330 Wis. 2d 340, 793 N.W. 2d 476 ......................................... 16, 18

**Statutes**

28 U.S.C. § 1404(a) ............................................................................ 4, 24

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................... 1, 2, 3, 4, 10, 12, 25

Fed. R. Civ. P. 12(c) ........................................................................ 3

Fed. R. Civ. P. 12(d) ............................................................... 1, 4, 12, 13

Fed. R. Civ. P. 56 ........................................................................... 1

Case 2:24-cv-00468-BHL   Filed 07/10/24   Page 4 of 30   Document 10

## INTRODUCTION

Despite expressly seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6), Defendant's Motion to Dismiss does not explain how Mr. Comer's Complaint fails to state a claim upon which relief can be granted, as that rule requires. Rather, Defendant seeks dismissal based on a waiver argument, derived from three employment agreements that do not apply to this dispute: an Independent Contractor Agreement; an Employee Confidentiality, Non-Solicitation and Proprietary Rights Agreement (the "Confidentiality Agreement"); and an Employee Separation and Release of Claims Agreement (the "Severance Agreement") (collectively, the "Employment Contracts"). None of these agreements is attached to, referenced, or relied on in the Complaint, and none of the claims in the Complaint relates to or arises from them. The Employment Contracts predate the events giving rise to Mr. Comer's claims. Because they are outside the pleadings, they are not properly considered in support of a Motion to Dismiss. The Court should exclude the agreements, and the information derived from them, as matters outside the pleadings. If the Court does not exclude these materials, Defendant's Motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d).

Even if Defendant's Motion is converted to one seeking summary judgment, the Employment Contracts are irrelevant to this case. The Employment Contracts govern issues and disputes arising during and within the scope of Mr. Comer's employment with Hagerty. The Independent Contractor Agreement, which was in effect from August 1, 2017, to July 31, 2019, was superseded by the Confidentiality Agreement, which governed the terms of Mr. Comer's relationship with Hagerty during the time that he was employed there. The Severance Agreement and its release provision, which Defendant primarily relies on in seeking dismissal, is expressly

limited to claims relating to Mr. Comer's employment or termination that arose prior to the date the agreement was entered.

Mr. Comer's claims do not fall within the purview of the Severance Agreement and its release. Mr. Comer alleges tort claims and violations of statutes based on conduct that does not relate to Mr. Comer's employment and that occurred *after* Mr. Comer's termination from Hagerty in December 2022. Moreover, none of these agreements gives Defendant the right to misuse Mr. Comer's name, image, and portrait in the manner set forth in the Complaint, which violates not only Mr. Comer's statutory and common law rights of publicity, but also the federal Lanham Act. For all of these reasons, the Employment Contracts should not be considered as a basis for dismissing the Complaint.

Defendant alternatively asks the Court to compel arbitration or transfer venue. But these arguments also rely on the inapplicable Severance Agreement, an extraneous document that was improperly included in Defendant's Motion. Even if the Severance Agreement was properly included, it extends only to disputes relating to Mr. Comer's employment or termination, which are not at issue here. With no applicable agreement to arbitrate, the Court cannot compel arbitration. And with no contractual requirement to use a different venue, Defendant has not shown a basis for transferring from Mr. Comer's chosen forum. Because the Defendant has offered no other substantive reasons for dismissal under Rule 12(b)(6), arbitration, or a change of venue, this Motion should be denied in its entirety.

## LEGAL STANDARD

A defendant bringing a Motion to Dismiss under Rule 12(b)(6) must establish that the Complaint "fail[s] to state a claim upon which relief can be granted." *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). To meet that burden, the defendant must show that the

plaintiff has failed to allege sufficient facts to state a claim that is plausible on its face. *NewSpin Sports, LLC v. Arrow Elecs., Inc.* 910 F.3d 293, 299 (7th Cir. 2018). In considering a Rule 12(b)(6) motion, courts will accept all well-pleaded facts as true, drawing all inferences in favor of the plaintiff. *Id.*

Because a Rule 12(b)(6) motion challenges the sufficiency of the complaint itself, it is generally not the proper vehicle for raising an affirmative defense. *See Gunn*, 986 F.3d at 808. ("With a narrow and pragmatic exception for a plaintiff who has pleaded herself out of court, the appropriate vehicle for resolving an affirmative defense is a motion for judgment on the pleadings under Rule 12(c), not a Rule 12(b)(6) motion."). A plaintiff is not required, under Rule 12(b)(6), to plead facts sufficient to "anticipate and defeat affirmative defenses." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). To survive a motion to dismiss, a plaintiff need only allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant who does not contest the sufficiency of the facts, but argues that the plaintiff should nonetheless be barred from bringing the claims due to some affirmative defense, has not stated an adequate basis for dismissal under Rule 12(b)(6). *See Illumination Mgmt. Sols., Inc. v. Ruud,* No. 10-C-1120, 2012 WL 4069315, at *9 (E.D. Wis. Sept. 14, 2012) (Randa, J.) ("The purpose of a Rule 12(b)(6) motion is to identify defects in a plaintiff's claim, not the presence of a defendant's affirmative defense.")

A defendant likewise must limit its Rule 12(b)(6) argument to the material that is in the pleadings, without bringing in extraneous documents to support its motion. *General Elec. Cap. Corp., v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) ("In response to an ordinary 12(b)(6) motion, a court simply examines the allegations in the complaint to determine whether

they pass muster."). If, in a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Courts have recognized limited exceptions to this rule, when a court can take judicial notice of the outside matters, or when the materials are referenced in the complaint or central to the claims. *Gen. Elec.,* 128 F.3d at 1080-81. But when the outside documents were not referenced or relied on in the Complaint, and have no connection to the asserted claims, they cannot be considered without converting the motion to one for summary judgment. Alternatively, a court may decline to consider the documents altogether, thus avoiding the need to convert the motion into one for summary judgment. *See Excel Homes, Inc. v. Locricchio,* 7 F. Supp. 3d 706, 710 (E.D. Mich. 2014) (declining to consider "two affidavits as well as various other documents" attached to defendant's motion to dismiss.).

Defendant alternatively asks the court to compel arbitration in this matter. Arbitration is a matter of contract. A court cannot compel a party to submit to arbitration unless the party has agreed to it. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019). Before compelling arbitration, a court must determine both that an enforceable agreement to arbitrate exists, and that the dispute at issue is within the scope of that agreement. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2017). If no such agreement to arbitrate exists, or the dispute at issue does not relate to an enforceable agreement, a motion to compel arbitration cannot be granted.

Finally, Defendant seeks a transfer of venue under 28 U.S.C. § 1404(a). This statute allows the court "for the convenience of parties and witnesses" and "in the interest of justice" to transfer an action to another district where it might have been brought. There is a presumption in favor of keeping an action in the forum that the plaintiff has chosen, provided it is an appropriate

venue for the case. To overcome that presumption, the party seeking a transfer must demonstrate that their preferred forum is "*clearly* more convenient," for the parties and potential witnesses, *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir. 1986) (emphasis added), and also that the change would promote the interests of justice. *Innovaport, LLC v. Target Corp.,* 678 F. Supp. 3d 1060, 1063 (W.D. Wis. 2023).

**BACKGROUND**

Colin Comer is a world-renowned expert, author, and historian in the field of classic automobile collecting and appraising. (ECF No. 1 ¶ 8.) Defendant Hagerty is an insurer of classic automobiles that also provides content and services to customers located throughout the United States through its media platforms and membership program. (ECF No. 1 ¶ 36-37, 57-59.) Mr. Comer was professionally involved with Hagerty for several years, beginning as an independent contractor in August 2017, and was terminated in December 2022. (ECF No. 1 ¶ 9, 21.)

Hagerty first engaged Mr. Comer as an independent contractor to write articles, to consult on the creation of Hagerty's online classic automobile marketplace (the "Hagerty Marketplace"), and to participate as a panelist or speaker at events or seminars hosted by Hagerty. (ECF No. 1 ¶ 9.) His Independent Contractor Agreement, which "set[] forth the terms and conditions whereby [Mr. Comer] agree[d] to provide certain services" (ECF No. 9-2, at 1), had a set term of 24 months, from August 1, 2017, through July 31, 2019. (ECF No. 9-2, Section 3.) Under that agreement, Hagerty owned the right, title, and interest to the deliverables that Mr. Comer produced for Hagerty (ECF No. 9-2, Section 6.1), but Mr. Comer retained ownership of his own content that he developed independently. (ECF No. 9-2, Section 6.5.)

5

On December 28, 2018, Mr. Comer transitioned from an independent contractor to employee of Hagerty. (ECF No. 1 ¶ 10.) On January 30, 2019, Mr. Comer entered the Confidentiality Agreement. (ECF No. 9-3.) This new agreement included a clause whereby Mr. Comer's work product created "during the period of [his] employment" and "relating in any way to the business or contemplated business, research, or development" of Hagerty, would be Hagerty's property as his employer. (ECF No. 9-3, Section 2(a).) Mr. Comer also consented to the use of his "name, voice, likeness, image" in Hagerty's various media platforms, during or after the period of employment for "legitimate business purposes." (ECF No. 9-3, Section 4.) The Confidentiality Agreement expressly governed the terms of Mr. Comer's employment, and his employment with Hagerty was the only consideration that he received. (ECF No. 9-3 at 1.) In entering the Confidentiality Agreement, Mr. Comer did not consent to the assignment of his "name, voice, likeness, image" beyond the "legitimate business purposes" that the parties agreed to. (ECF No. 9-3, Section 4.) Mr. Comer has not alleged any claims arising under the Confidentiality Agreement. (ECF No. 1.)

During his years as an independent contractor, and later employee, of Hagerty, Mr. Comer wrote articles that were published in Hagerty's print and digital publications. (ECF No. 1 ¶ 11-12.) In August 2017, Hagerty requested that Mr. Comer provide a photographic "headshot," that would run with his columns in Hagerty's print magazine, to identify him as the author. (ECF No. 1 ¶ 15.) Mr. Comer provided the headshot for Hagerty to use for that purpose. (ECF No. 1 ¶ 15.) On June 24, 2019, Hagerty requested another headshot for the digital edition of its "Hagerty Insider" publication. (ECF No. 1 ¶ 16.) Mr. Comer provided the second headshot, which Hagerty used to create a realistic "pencil" drawing of Mr. Comer that Hagerty displayed with Mr. Comer's articles. (ECF No. 1 ¶ 17-18.) During Mr. Comer's employment, Hagerty did

not use his image for any purpose other than to identify him as the author of the works he created for Hagerty. (ECF No. 1 ¶ 19.) At no point during his time as an independent contractor or employee did Hagerty use Mr. Comer's name or likeness to promote or solicit sales of its club membership program, insurance products, or other services. (ECF No. 1 ¶ 20.)

On December 5, 2022, Hagerty terminated Mr. Comer. (ECF No. 1 ¶ 21.) The parties entered a Severance Agreement that was dated December 5, 2022 and executed on February 23, 2023. (ECF No. 9-5.) The Severance Agreement contained an integration clause superseding "all prior and contemporaneous understandings, discussions, agreements, representations, and warranties," regarding the subject matter of the Severance Agreement, with the exception of the Confidentiality Agreement. (ECF No. 9-5, Section 14.) It also contained a release provision, which was expressly limited to claims "arising out of, or in any way related to [Mr. Comer's] hire, benefits, employment, termination, or separation from employment," and covered the period "from the beginning of time up to and including the date of [Mr. Comer's] execution of this Agreement." (ECF No. 9-5, Section 4(a)." Thus, the Severance Agreement unambiguously released only those claims relating to Mr. Comer's employment that arose prior to February 23, 2023. The arbitration and venue provisions of the agreement were likewise limited to disputes arising out of or related to Mr. Comer's employment with Hagerty or the termination of his employment. (ECF No. 9-5, Sections 12, 13.)

The parties' respective rights over Mr. Comer's work, image, and likeness were addressed in a separate post-termination agreement, dated January 27, 2023 (the "Rights Agreement"). (ECF No. 1-1.) This agreement, which Plaintiff attached as Exhibit A to the Complaint, was entered "[c]oncurrently with and in consideration of" the Severance Agreement. It reaffirmed, following Mr. Comer's termination, that Hagerty held rights only to the articles and media that

Mr. Comer "created during the scope of his employment." (ECF No. 1-1 at 2.) It also established that Mr. Comer was the owner of "the Appraiser" a program that he had "not created within the scope of" his engagements with Hagerty. (ECF No. 1-1 at 1.) In the Rights Agreement, Hagerty quitclaimed any rights it had in "the Appraiser" to Mr. Comer, as well as all associated publicity rights to Mr. Comer, stating that "[t]o the extent that Hagerty has any claim, rights, title or interest in and to The Appraiser or The Appraiser Rights *or any rights in or to Mr. Comer's name, likeness*, performance or life rights, Hagerty irrevocably assigns, conveys, releases and quitclaims to Mr. Comer . . . any and all of Hagerty's rights, title, and interest of every kind and nature in and to The Appraiser and The Appraiser Rights." (ECF No. 1-1 at 1 (emphasis added).) Pursuant to the Rights Agreement, Hagerty maintained the right to use Mr. Comer's name and likeness only as it had during his employment—to identify him as the author of the "Employment Works" that he created for Hagerty. (ECF No. 1-1 at 2.)

The Severance Agreement and the Rights Agreement, read together, govern the terms of the parties' relationship following Mr. Comer's employment. But the Severance Agreement is limited to matters within the scope of Mr. Comer's employment and termination. Only the Rights Agreement addresses Mr. Comer's publicity rights.

At some time after entering the Rights Agreement, Plaintiff began publishing a new column on its website called "Ask the Appraiser." (ECF No. 1 ¶ 28.) Mr. Comer first learned of Hagerty's use of the Appraiser in summer of 2023, and promptly sent Hagerty a cease and desist letter. (ECF No. 1 ¶ 29.) Hagerty stopped using the term on its website shortly after receiving the letter. (ECF No. 1 ¶ 30.) Then, in August 2023, Mr. Comer learned that Hagerty was using the illustration it had created based on Mr. Comer's headshot on its website. (ECF No. 1 ¶ 31.) But instead of being used in connection Mr. Comer's articles, as before, the illustration now appeared

on the landing page of Hagerty's Club Membership program, alongside similarly-styled pencil drawings of Jay Leno, Wayne Carini, and Aaron Robinson (who, like Mr. Comer, are celebrities in the world of classic automotive collecting). (ECF No. 1 ¶ 31, 34.) None of the articles or videos Mr. Comer created for Hagerty was linked or expressly referenced on the page. (ECF No. 1 ¶ 46.) Rather, the purpose of using Mr. Comer's name and likeness, alongside that of Mrs. Leno, Carini, and Robinson, was to entice people to sign up for Hagerty's Club Membership and buy related products and services. (ECF No. 1 ¶ 46-47.) A heading on the page read "Enjoy regular columns from beloved contributors." (ECF No. 1 ¶ 38.) Mr. Comer was not contributing "regular columns" to Hagerty at this time (having been terminated months earlier). And even when he was a contributor to Hagerty, Hagerty never used, and Mr. Comer never consented to or received any consideration for having his name or image used in this way. (ECF No. 1 ¶ 49.)

Mr. Comer brought this Complaint, alleging violations of Wisconsin's right of publicity statute, common law right of publicity, false endorsement, false advertising, and unfair competition under the Lanham Act, and unjust enrichment. (ECF No. 1.) The claims in the Complaint, and the facts underlying them, pertain solely to Hagerty's actions after Mr. Comer's employment ended. The Complaint describes the violation as occurring "[f]or a period of time following Defendant's termination of Colin Comer's employment, until at least January 1, 2024." (ECF No. 1 ¶ 1.) The section titled "Defendant's Wrongful Acts" refers to Hagerty's actions as occurring in the "summer of 2023" and in the following months. (ECF No. 1 ¶ 28.) The Complaint explicitly defines the "Infringing Period" as "a period of time commencing after Defendant's termination of Colin Comer's employment and ending in or around January 2024." (ECF No. 1 ¶ 35.) None of the acts that gave rise to Mr. Comer's claims occurred while Mr. Comer was still employed with Hagerty. Accordingly, the Complaint makes no mention of

9

the Independent Contractor Agreement, the Confidentiality Agreement, or the Severance Agreement, all of which pertain solely to Mr. Comer's employment, and do not cover Hagerty's misconduct after Mr. Comer was terminated.

In moving to dismiss, Hagerty contends that Mr. Comer failed to state a claim under Rule 12(b)(6). But Hagerty's memorandum in support of the Motion does not show any deficiencies in Mr. Comer's pleading. Rather, Hagerty suggests that the Complaint should be dismissed (or, alternatively, subject to arbitration or a change in venue) based entirely on the Employment Contracts, which were not referenced in the Complaint.

## ARGUMENT

## I. THE AGREEMENTS THAT DEFENDANT RELIES ON TO SEEK DISMISSAL ARE OUTSIDE DOCUMENTS THAT ARE INAPPLICABLE TO THIS CASE AND DO NOT BAR PLAINTIFF'S CLAIMS.

### a. The Defendant Has Failed to Show That Michigan Law Should Apply.

Contractual choice of law provisions do not govern tort claims unless it is clear that the parties intended them to. *Cerabio LLC v. Wright Med. Tech., Inc.,* 410 F.3d 981, 987 (7th Cir. 2005). A federal court sitting in diversity will apply "the choice of law rules of the state in which it sits." *Frederick v. Simmons Airlines, Inc.,* 144 F.3d 500, 503 (7th Cir. 1998). When a plaintiff brings a tort claim under Wisconsin law, the court should apply Wisconsin's tort choice of law analysis. *See Thiele v. N. Mut. Ins.*, 36 F. Supp. 2d 852, 854 (E.D. Wis. 1999) (Goodstein, Mag. J.).

Under Wisconsin's tort choice of law analysis, a court will presumptively apply the substantive law of the forum state "unless it becomes clear that nonforum contacts are of greater significance." *Drinkwater v. Am. Family Mut. Ins.*, 2006 WI 56, ¶ 40, 290 Wis. 2d 642, 714 N.W.2d 568 (citation omitted). Courts will consider whether the "contacts with Wisconsin are so

minimal that applying Wisconsin law . . . constitutes officious intermeddling." *Thiele*, 36 F. Supp. at 855. If the non-forum state's contacts are not "clearly more significant" than the forum state's, then courts will consider the "(1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." *NCR Corp. v. Transport Ins. Co.,* 2012 WI App 108, ¶ 14, 344 Wis. 2d 494, 823 N.W.2d 532.

Hagerty has not shown that Michigan's contacts with this case are clearly more significant than Wisconsin's, as one party resides in Michigan and the other in Wisconsin. That the parties entered "three separate agreements containing a Michigan choice of laws clause" (ECF No. 9-1 at 12) is immaterial because none of those agreements are at issue in this case and each of those agreements was based solely on and limited to consideration bargained for by Mr. Comer specifically in relation to Mr. Comer's employment with Hagerty. Finally, the choice-influencing factors also do not weigh in favor of applying the non-forum state's laws here. *See Drinkwater*, 2006 WI at ¶ 53 ("This court has stated a general rule that the judicial task is rarely simplified when lawyers and judges must apply themselves to a foreign law"); ¶ 59 ("Wisconsin has a strong interest in compensating its residents who are victims of torts.")

The question of which state's law applies to the "interpretation of the Severance Agreement," (ECF No. 9-1 at 10) should be irrelevant, as the Severance Agreement should not be considered as part of this dispute, for the reasons set forth below. But to the extent such interpretation is necessary, Wisconsin law should apply.

### b. The Employment Contracts Represent Matters Outside the Pleadings and Should Not be Considered as Part of the Motion to Dismiss.

Courts deciding a motion to dismiss "generally may not consider material outside the complaint without converting the motion [to dismiss] to one for summary judgment." *Lynn*

*Props., LLC v. JTH Tax Inc*., No. 21-cv-305-wmc, 2022 WL 5505965, at *3 (W.D. Wis. May 5, 2022). In its Motion to Dismiss, Defendant cites cases for the proposition that "courts may examine 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice' when evaluating a motion to dismiss under Rule 12(b)(6)." (ECF No. 9-1 at 2 (quoting *Facebook, Inc. v. Teachbook.com, LLC*, 819 F. Supp. 2d 764, 770 (N.D. Ill. 2011)).) This is the exception, not the rule. The Seventh Circuit has likewise permitted consideration of outside documents that are "referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citation omitted). But the Seventh Circuit has defined this as a "narrow exception," that is "not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

In *Lynn Properties*, for example, the defendant attached to its motion to dismiss a purported "surrender agreement" that, defendant argued, relieved it of "any further legal obligations under its terms." *Lynn Props.*, 2022 WL 5505965, at *3. The court noted that because the plaintiff's complaint contained "no reference to the purported surrender agreement," the Rule 12(d) exception did not apply. *Id*. The extraneous agreement therefore could not be considered in reviewing defendant's motion to dismiss. *See also Gumm v. Molinaroli*, 569 F. Supp. 3d 806, 827 (E.D. Wis. 2021) (Pepper, J.) ("The defendants presented the court with documents outside the pleadings . . . as attachments to the motion to dismiss . . . [T]he court has considered only those documents referenced in, and central to the claims in, the amended complaint. . . .").

Hagerty's challenge to the Complaint rests on the claim that Mr. Comer "waived all claims against Defendant Hagerty that arose prior to the execution of the Severance Agreement."

(ECF No. 9-1 at 10.) This argument is an affirmative defense, not a challenge to the plausibility of the facts Mr. Comer has asserted. To support this defense, Hagerty attaches, and quotes extensively, from the Severance Agreement executed on February 23, 2023. Defendant does not explain how this Agreement falls under the narrow exception to the rule barring documents outside the pleadings. It is not an adjudicative fact of which the Court may take judicial notice, but a contract between the parties who dispute its application to the case. And Hagerty acknowledges that the Severance Agreement was never referenced, incorporated by reference, or even alluded to in the Complaint. (ECF No. 9-1 at 1 (referring to the Severance Agreement as "notably omitted" from the Complaint).) Hagerty also cannot argue that the agreement was central to Plaintiff's claims, which stem from Hagerty's conduct after the Severance Agreement was executed and do not relate to the Severance Agreement at all.

Hagerty's reliance on the Severance Agreement is contrary to Rule 12(d), which limits motions on the pleadings to the face of the Complaint. The Severance Agreement, like all references to the Employment Contracts and numerous factual statements based on the Employment Contracts, are outside the pleadings properly before the Court and should be excluded from consideration.

### c.     The Severance Agreement's Release Provision Expressly Does Not Apply to Mr. Comer's Claims.

Even if the Severance Agreement could be properly considered, the release that Plaintiff relies on does not contain the sweeping waiver Hagerty assigns to it. Hagerty initially misstates the release provision, stating that Mr. Comer "waived all claims against Defendant Hagerty that arose prior to the execution of the Severance Agreement." (ECF No. 9-1 at 10.) In fact, the release is expressly limited to only claims "arising out of, or in any way *related to the Employee's hire, benefits, employment, termination, or separation from employment* with the

Employer Group." (ECF No. 9-5 at Section 4(a) (emphasis added.) The plain language of the provision states that Hagerty did not waive "all claims" against Hagerty, but only those claims relating to his employment or termination. Section 5(e) expressly states that "the Employee is not waiving or releasing rights or claims that may arise after the Employee signs this Agreement." (ECF No. 9-5, Section 5(e).)

This distinction is critical here, because none of the claims in the Complaint relates to Mr. Comer's employment or termination; and all of the claims in the Complaint relate to conduct that arose after Mr. Comer signed the Severance Agreement. Mr. Comer is not claiming that he was wrongfully terminated, or that anything that Hagerty did with respect to his hire, benefits, or employment was wrongful. Mr. Comer is not suggesting that Hagerty violated his right of publicity by using his name and image to identify him as the author of articles he wrote for Hagerty when he was an employee. Rather, Mr. Comer's claims are based in Hagerty's wrongful use of his name and likeness in the months *after* his employment ended. Had Mr. Comer never been employed by Hagerty, and discovered that Hagerty was falsely advertising him as a regular contributor, his claims would have been the same.

The release is also expressly limited in time to all claims occurring "up to and including the date of the Employee's execution of this Agreement." (ECF No. 9-5, Section 4(a).) None of Mr. Comer's claims falls within this time period. The Severance Agreement was entered on February 23, 2023. The Complaint alleges no conduct occurring before this date. Although Mr. Comer does not know the precise date that Hagerty first misused his name and likeness, he alleges in the Complaint that it began at some point after his termination on December 5, 2022, and that Mr. Comer did not even learn of it until summer of 2023, months after the Severance

Agreement was executed. Mr. Comer's claims thus fall outside the bounds of the release agreement based on timing as well.

Hagerty's attempt to bring the Complaint into the time period covered by the release is unavailing. Hagerty lists a series of actions that "occurred prior to [Mr. Comer's] execution of the Severance Agreement." (ECF No. 9-1 at 15.) The first item in the list misrepresents the Complaint. Hagerty states that Mr. Comer admits the alleged infringement "commenc[ed] after Defendant's termination of Colin Comer's employment." Id. Although this is true, Hagerty subsequently presents this as an admission that this action occurred "prior to [the] execution of the Severance Agreement." At no point in the Complaint does Mr. Comer allege that the infringement commenced before February 23, 2023. Mr. Comer alleged that the infringement occurred at some time *after* his termination, and was ongoing as of the summer of 2023. To say that Mr. Comer "admits" that Hagerty's actions pre-dated the Severance Agreement is simply false. Further, as stated in the Complaint, Hagerty intentionally misspelled Mr. Comer's name, which Mr. Comer believes was done to hide Hagerty's conduct from him.  (ECF No. 1 ¶ 32, 33.) Next, Hagerty lists several acts that, although occurring before the Severance Agreement, did not give rise to the claims. It is true that Mr. Comer provided Hagerty with headshots to "identify Colin Comer as the author" of articles that Hagerty published. (ECF No. 9-1 at 15.) But as the Complaint makes clear, Mr. Comer has no objection to Hagerty using his image for this purpose during his employment. This information was included in the Complaint as part of the factual background, and is not part of the wrongful conduct Mr. Comer alleges.

The wrongful conduct that led to this Complaint occurred after Mr. Comer was terminated, when Hagerty began falsely advertising Mr. Comer as a "regular" contributor in order to sell subscriptions to its membership program. Hagerty cannot convert Mr. Comer's

claims into employment or contractual claims (and declare them waived) simply because Hagerty's false advertising happened to use the same illustration created and used for legitimate business purposes approved by Mr. Comer when he was an employee. The Complaint makes clear that the wrongful conduct at issue began after Mr. Comer's termination and was ongoing long after the Severance Agreement was executed. The Complaint even defines a set "Infringing Period" as beginning after Mr. Comer's separation (ECF No. 1 ¶ 35), and cites no specific wrongful acts occurring before summer of 2023. There is no support for Hagerty's suggestion that Mr. Comer's claims arose prior to his termination and were "waived" with the entry of the Severance Agreement.

It is true, under both Michigan and Wisconsin law, that contracts should be interpreted to honor the parties' intent, and that the parties' intent should be discerned from the language of the contract so long as that language is unambiguous. *See Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, 330 Wis. 2d 340, 793 N.W. 2d 476; *Kyocera Corp. v. Hemlock Semiconductor, LLC*, 886 N.W. 2d 445 (Mich. Ct. App. 2015). But these principles militate *against* the application of the release.

The plain language of the release provision proves that Mr. Comer did not release Hagerty from all claims that he might possibly have against Hagerty in perpetuity. By including language limiting the release to claims related to employment and arising prior to the date of the severance agreement, the parties expressly limited the release to those terms. *See Aeroground, Inc. v. CenterPoint Props. Tr.,* 738 F.3d 810, 813 (7th Cir. 2013) (when interpreting a contract, courts "must seek to give effect to 'each clause and word used,' without rendering any terms meaningless." (citation omitted)). To release Hagerty from tortious conduct having nothing to do

with Mr. Comer's employment, and occurring months after the agreement was entered, would expand the scope of this provision far beyond the parties' stated intent.

Because the release provision does not apply to the conduct alleged in the Complaint, the Court may disregard Hagerty's argument that Mr. Comer "failed to tender back the consideration he received under the Severance Agreement" (ECF No. 9-1 at 16) and cannot challenge the release. In filing this Complaint, Mr. Comer did not seek to "escape the release." Id. For purposes of this Opposition, Mr. Comer does not dispute that the release remains in effect. It simply does not apply to the claims that Mr. Comer brought in this particular action, which do not relate to his employment or termination, and arose outside the term of the Severance Agreement.

> **d.** **The Confidentiality Agreement Provision Does Not Apply to Mr. Comer's Claims.**

In arguing that Mr. Comer's complaint should be barred, Hagerty also cites the Confidentiality Agreement entered on January 30, 2019, where Mr. Comer consented to uses and displays by Hagerty of his "name, voice, likeness, image, appearance, and biographical information" in printed and electronic forms and media "for all legitimate business purposes of the Employer Group." (ECF No. 9-3, Section 4.)  Hagerty does not explain how this provision applies to Mr. Comer's Complaint, and indeed, it does not. As an initial matter, the Confidentiality Agreement governs the terms of Mr. Comer's employment. His employment was the sole consideration that he received for the agreement. (ECF No. 9-3, at 1.) After his employment ended, Mr. Comer's publicity rights were governed by the terms of the Rights Agreement.

In the context of Mr. Comer's term of employment, The Confidentiality Agreement allows Hagerty to use Mr. Comer's name, image, and likeness in connection with various

"printed and electronic forms and media." This is precisely how Mr. Comer's name, image, and likeness was used during his employment—to identify him as the author of the articles and other media content that he produced for Hagerty during his employment. Mr. Comer does not dispute that Hagerty had the right to do that. What Mr. Comer did not agree to or receive consideration for, was for Hagerty to use his name, image, and likeness to sell products and services in a way that was misleading to customers and in violation of the Lanham Act. This is the use that Mr. Comer objects to, and it is not covered by this provision of the Confidentiality Agreement.

The Confidentiality Agreement expressly limits the use of Mr. Comer's name, image, and likeness to "legitimate business purposes." The legitimate business purpose that Mr. Comer agreed to was the use of his name and image in connection with the works of authorship he created on Hagerty's behalf. It could not have included allowing Hagerty to misrepresent Mr. Comer as an ongoing "regular" contributor, imply that he continues to endorse and be affiliated with Hagerty after employment, and to use Mr. Comer's name and portrait to induce sales of club memberships without his knowledge. And it certainly did not include engaging in false, misleading and deceptive conduct in violation of the Lanham Act.

As Hagerty acknowledges, contracts must be interpreted to discern the intent of the parties. *Town Bank*, 2010 WI 134, ¶ 33. As the limited language of the agreement reflects, Mr. Comer's intent was not to give Hagerty unlimited rights to use his name, image, and likeness for all purposes, even unlawful purposes, for all time. And to the extent Hagerty's limited rights extended after Mr. Comer's employment, they remained limited to the purpose that the parties agreed to when Mr. Comer was employed by Hagerty—that is, to identify him with certain works of authorship that he created while employed by Hagerty.

**The Rights Agreement Reaffirms Mr. Comer's Right of Publicity.**

Of all the agreements that Hagerty cites in its Motion, the Rights Agreement is the only one that directly addresses the parties' rights and ownership over Mr. Comer's intellectual property, works of authorship, and name, image, and likeness following his termination. It is, therefore, the only agreement relevant to Mr. Comer's complaint. The Rights Agreement establishes that Hagerty will continue to have the right and license to publish the articles that Mr. Comer wrote while he was an independent contractor and employee of Hagerty. But the Agreement also recognizes that "the Appraiser" "was not created within the scope of Mr. Comer's engagements with Hagerty." In light of that, Hagerty assigned to Mr. Comer any rights that he had in the name the Appraiser and associated rights, as well as "any rights in or to Mr. Comer's name, likeness, performance or life rights." (ECF No. 1-1 at 1.)

The Severance Agreement does not supersede the Rights Agreement, as the two are meant to be considered together. Hagerty's Motion predicts that Mr. Comer will "argue that the Severance Agreement and the Appraiser Agreement must be read together because they were executed only a month apart." (ECF No. 9-1 at 17.) But this is not merely a matter of close proximity in time. The Rights Agreement states outright that it applies "[c]oncurrently with, and in consideration of the mutual covenants and agreements set forth in the Employee Separation and Release of Claims Agreement dated December 5, 2022." The Rights Agreement further includes a clause stating that it supersedes all prior and *contemporaneous* agreements between the parties concerning the subject matter of the Rights Agreement. (ECF No. 1-1 at 2.)

In its discussion of the Rights Agreement, Hagerty appears to misunderstand both what the agreement says and what Mr. Comer is alleging. Hagerty states that under the Rights Agreement and previous agreements between the parties, Hagerty "was to own all of Plaintiff

Comer's work," and that Mr. Comer requested an "accommodation" after his termination that Hagerty "would not continue to own his internet show." (ECF No. 9-1 at 18.) Hagerty states that in granting that accommodation, it reserved ownership of "the articles and shows that Mr. Comer created during the scope of his employment." Id. Hagerty posits that such a right, without the accompanying right to Mr. Comer's name and likeness, would be "nonsensical" because Mr. Comer's name and likeness appear within the articles and shows. Id. Hagerty also suggests that if Mr. Comer "desired Defendant Hagerty to assign any rights that it had in or to the use of his name or likeness in association with articles that he wrote for Defendant Hagerty's magazines or shows that he produced for Defendant Hagerty during his employment, he could have included such a clause in the Appraiser Agreement." (ECF No. 9-1 at 17-18.)

In fact, the parties never agreed that Hagerty owned "all of Plaintiff Comer's work." The parties agreed that Hagerty owned only those articles and shows that Mr. Comer created *for Hagerty* in the scope of his employment (referred to in the Rights Agreement as "Employment Works".) Accordingly, in the Rights Agreement, Mr. Comer granted Hagerty a license to continue using those works. By contrast, Mr. Comer retained ownership over his own work that was created independently of Hagerty. (*See, e.g*. ECF No. 9-2, Section 6.5.) It was stated expressly in the Rights Agreement that the Appraiser was something Mr. Comer created independently, and was "not created within the scope of Mr. Comer's engagements with Hagerty." (ECF No. 1-1 at 1.) Thus, the Rights Agreement established that Mr. Comer owned "all rights, title, and interest in and to the Appraiser." Id. But the parties did not limit the Rights Agreement to just the Appraiser. The agreement also establishes Mr. Comer's rights to his own "name, likeness, performance, or life rights." Id. To the extent that Hagerty had any rights or

interest in those things while it was his employer, Hagerty quitclaimed those rights to Mr. Comer when it entered the Rights Agreement.

Contrary to Hagerty's Motion, Mr. Comer does not "desire[] Defendant Hagerty to assign any rights that it had in or to the use of his name or likeness in association with" (ECF No. 9-1 at 17) the Employment Works. Nor does Mr. Comer wish to deny Hagerty the "right to use [his] name or likeness" (id. at 18) to identify him as the author of the Employment Works. These are permitted uses that Mr. Comer agreed to during his employment. What Hagerty may *not* do, is use Mr. Comer's name, image, and likeness to falsely advertise Mr. Comer as a "regular" contributor to Hagerty's publications and imply that Mr. Comer continues to be affiliated with and continues to endorse Hagerty's products and services. Such unlawful uses were never granted or approved during Mr. Comer's employment with Hagerty and are a violation of Mr. Comer's "name, likeness, performance, or life rights," under both the Rights Agreement and Wisconsin law.

### f.    Even If Considered, The Employment Contracts Have No Bearing on Mr. Comer's Other Claims.

Although Hagerty evidently seeks to dismiss Mr. Comer's Complaint in its entirety, its arguments for dismissal are targeted to Mr. Comer's right of publicity claims. Even if Hagerty could show that Mr. Comer waived his right of publicity claims in his prior agreements with Hagerty, and even if the Rights Agreement applied solely to "the Appraiser," leaving out all mention of Mr. Comer's "name, likeness, performance, or life rights," these findings would only affect the first two claims in the Complaint. Mr. Comer also alleged false endorsement, false advertising, and unfair competition under the Lanham Act, as well as unjust enrichment. Hagerty is still subject to these laws. Thus, the Complaint asserts that Hagerty's conduct is tortious and actionable, independently of any asserted right of publicity. The Complaint sets forth specific

factual allegations in support of these claims, as well as its unjust enrichment claims, which together state a plausible claim for relief. In its Motion, Defendant does not dispute the sufficiency of what Mr. Comer has pled in support of these claims, or offered any other arguments to challenge them. Defendant also cannot raise any such arguments for the first time in its reply brief. *TAS Distrib. Co. v. Cummins Engine Co.,* 491 F.3d 625, 630 (7th Cir. 2007) ("[I]t is well-settled that arguments first made in the reply brief are waived.")

## II.    HAGERTY FAILED TO STATE A BASIS FOR COMPELLING ARBITRATION.

Hagerty's alternative claim for arbitration also fails because, like its claim for dismissal, it relies on the extraneous Severance Agreement. As Hagerty states, under the Federal Arbitration Act, a court must compel arbitration where there is "(1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." (ECF No. 9-1 at 19 (citing *A.D. v. Credit One Bank, N.A.*, 885 F.3d at 1060). Those conditions are not met here.

Defendant's bid for arbitration is based on the Severance Agreement, which states that "any dispute, controversy, or claim arising out of or related to [Mr. Comer's] employment with [Hagerty] or termination of employment, this [Severance Agreement], or any alleged breach of this [Severance Agreement] shall be governed by the Federal Arbitration Act (FAA) and submitted to and decided by binding arbitration . . . ." (ECF No. 9-5. Section 12.) Arbitration cannot be mandated here because Mr. Comer's claims do not arise out of his employment, his termination, the Severance Agreement, or any alleged breach of the Severance Agreement.

Anticipating this point, Defendant offers that Mr. Comer's claims "[c]learly" relate to his employment because his "allegations primarily arise out of his belief that he did not assign certain rights to the use of his name and likeness to Defendant Hagerty during the term of his

employment." (ECF No. 9-1 at 20-21.) This strained theory—that Mr. Comer's claims arise from his *belief* that he did not assign certain rights during his employment and so relate to his employment—does not appear anywhere else in the Motion, and Hagerty does not elaborate on it here. As plainly alleged in the Complaint, Mr. Comer's claims arise not from his own beliefs about what rights he assigned during employment, but from *Hagerty's actions* after terminating Mr. Comer, which included misleading consumers and attempting to profit from the misuse of Mr. Comer's name and likeness. Hagerty cannot shield itself from all future claims of misconduct by arguing that they somehow relate to Mr. Comer's employment and must therefore be dismissed or subjected to arbitration under the Severance Agreement.

Again, even if the Court found that Mr. Comer's right of publicity claims related to his employment with Hagerty, and that the Severance Agreement's provision applied, this still would not extend to the other non-right of publicity claims that Mr. Comer has brought in this action. Thus, Hagerty's contention that "*all of* the claims asserted by Plaintiff Comer in this case arise out of employment-related questions," and "*all of* the claims raised in this lawsuit are subject to arbitration" (ECF 9-1 at 21 (emphasis added)), is incorrect for that reason as well.

## III.    HAGERTY FAILED TO SHOW THAT A TRANSFER OF VENUE IS WARRANTED.

When a plaintiff brings a case in a proper venue, courts will not disturb the plaintiff's choice of venue "unless the balance is strongly in favor of transfer." *Innovaport,* 678 F. Supp. 3d at 1063. The party seeking to transfer venue has the burden to show that the "transferee forum is *clearly* more convenient," taking into consideration the convenience of the parties and witnesses, the availability of non-party witnesses, the relative ease of access to evidence and the location of material events. *Id.* (citation committed). To make this showing, it is not enough to argue that another forum would be equally convenient. *Coffey,* 796 F.2d at 220 (finding that the movant had

not met her burden where "[a]t best she has indicated that a federal district court in Ohio might be as convenient as its sister Indiana court."). Courts additionally consider the "interest of justice" which refers to the "efficient administration of the court system, including factors such as (1) the likely time to trial in the respective forums and (2) judicial economy." *Innovaport*, 678 F. Supp. 3d at 1063. Whether a transfer is in the "interest of justice" depends on "the efficient functioning of the courts, not the merits of the underlying dispute." *Coffey,* 796 F.2d at 221.

Hagerty has not met its burden to show that a transfer of venue is warranted. In seeking the transfer, Hagerty refers first to the Employment Contracts, each of which included a provision agreeing to venue in Michigan. These provisions are immaterial here, as they refer only to disputes arising under or enforcing those respective contracts. (*See, e.g.* ECF No. 9-5, Section 13 ([a]ny action or proceeding by either of the Parties *to enforce this Agreement* shall be brought only in any state or federal court located in the state of Michigan." (emphasis added)).) This is not an action to enforce any of the Employment Contracts. Therefore, these venue provisions are inapplicable. The only agreement that the Complaint mentions is the Rights Agreement, which contains no venue clause. It cannot be said that Mr. Comer, "notably ignored" any agreement to venue this action in Michigan. (ECF No. 9-1 at 22.)

Apart from its reference to the inapplicable Employment Contracts, Defendant does not dispute that it is subject to personal jurisdiction in the Eastern District of Wisconsin, or that venue is improper. Rather, Hagerty contends under 28 U.S.C. § 1404(a) that "[a] transfer of venue is proper for the convenience of the parties and witnesses and in the interest of justice." (EC No. 9-1 at 22.) But Defendant offers meager support for this assertion. In support of "convenience," Hagerty notes that it is located in Michigan, and adds, with no support or explanation, that "all witnesses with information relevant to [Mr. Comer's] work with Defendant

24

Hagerty and his assignment of rights thereto are located in the State of Michigan," and that Mr. Comer is "[t]he only potential witness" located in Wisconsin. (ECF No. 9-1 at 22-23.) This unsubstantiated conclusory statement, which Mr. Comer disputes, is not enough to show that another venue would be "*clearly* more convenient."

Hagerty's argument for the "interest of justice" is also unpersuasive, relying entirely on the claim that the Western District of Michigan's mean time to disposition is slightly shorter (6.2 months) than the Eastern District of Wisconsin's (7.3 months). Finally, Hagerty observes that it is "considered advantageous to have federal judges try a case who are familiar with the applicable state law." (ECF No. 9-1 at 23 (quoting *Coffey,* 796 F.2d at 221). As described above, the "applicable state law" in this case is Wisconsin law. The law of the forum state presumptively applies, and one of Mr. Comer's claims was brought under a Wisconsin statute. Moreover, Defendant has not claimed Michigan law governs the dispute generally, but only the interpretation of the Severance Agreement. (ECF No. 9-1 at 11-12.) Mr. Comer is not bringing a claim under the Severance Agreement. He is bringing a tort action and claims for violations of Wisconsin statute and federal law. As the injured party, Mr. Comer is entitled to bring the action in his chosen proper venue. Hagerty does not dispute the fact that it conducts substantial business in, and therefore has substantial contact with, the State of Wisconsin.

## CONCLUSION

Despite moving to dismiss under Rule 12(b)(6), Hagerty does not establish—or even substantially argue—that Mr. Comer's Complaint does not plead sufficient facts to state a claim for relief. Instead, Hagerty relies on an affirmative waiver claim, rooted in contracts that have no application to this case, and are not properly considered as part of a motion to dismiss. The Court should exclude all of the Employment Contracts and, because Defendant's arguments for

dismissal, arbitration, and transfer of venue all depend on those contracts, deny Defendant's Motion in its entirety. Even if the Court were to consider these outside materials, the Court should find that they do not apply to the claims in this case. Therefore, even if the Employment Contracts are considered, Defendant's Motion must still be denied.

Dated this 10th day of July, 2024.

s/ Allen C. Schlinsog, Jr.
Allen C. Schlinsog, Jr., Bar No. 1025656
Elizabeth Elving, Bar No. 1115903
Daniel E. Kattman, Bar No. 1030513
Attorneys for Plaintiff
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202-3186
Telephone: 414-298-1000
Facsimile: 414-298-8097
Email: aschlinsog@reinhartlaw.com
Email: eelving@reinhartlaw.com
Email: dkattman@reinhartlaw.com

52116753v5