UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

COLIN COMER,

           Plaintiff,

    v.

HAGERTY, INC.,

           Defendant.

Case No. 24-cv-0468-bhl

---

**ORDER DISMISSING CASE ON FORUM NON CONVENIENS GROUNDS**

---

    Plaintiff Colin Comer is a renowned expert, author, and historian of classic automobiles. After Defendant Hagerty, Inc. terminated Comer's employment, Hagerty continued to use Comer's name and likeness to advertise its membership subscriptions until Comer demanded it cease and desist. Comer claims that Hagerty's unauthorized use of his name and likeness violated the Lanham Act, his right to privacy under Wisconsin statutory law, and his common-law right of publicity. He also claims that Hagerty was unjustly enriched. Hagerty has moved to dismiss all claims under Federal Rule of Procedure 12(b)(6), arguing that Comer waived his right to bring these claims in a Severance Agreement. Alternatively, Hagerty invokes Rule 12(b)(3) and asks the Court either to compel Comer to arbitrate his claims or to transfer the case to the Western District of Michigan. Because Comer's claims must be arbitrated under the Severance Agreement, the Court will grant Hagerty's motion and dismiss on *forum non conveniens* grounds.

## BACKGROUND

    Comer is a Wisconsin resident and an expert, author, and historian in the field of classic automobile collecting and appraising. (ECF No. 1 ¶¶3, 8.) Hagerty is a corporation with its principal place of business in Traverse City, Michigan that, among other things, produces online content and holds events and seminars concerning classic automobiles. (*Id.* ¶¶4, 9–10.) Between August 1, 2017, and December 27, 2018, Hagerty engaged Comer as an independent contractor to write articles on classic automobiles, consult on the creation of an online classic automobile marketplace, and participate as a panelist and speaker at events. (*Id.* ¶9.) On December 28, 2018,

Comer became a Hagerty employee, and continued to write articles and create content for Hagerty until his termination on December 5, 2022. (*Id.* ¶¶10–14, 21.) Comer has not written any articles for Hagerty since his termination. (ECF No. 1 ¶22.)

As part of his employment, Comer and Hagerty entered into an "Employee Confidentiality, Non-Solicitation and Proprietary Rights Agreement" (the Confidentiality Agreement) that assigned to Hagerty certain rights to Comer's name, image, and likeness both during and after his employment. (ECF No. 9-3 at 7–8.) Comer's employment was terminated pursuant to an "Employee Separation and Release of Claims Agreement" (the Severance Agreement), which contained a broad release of claims, as well as an arbitration clause and a forum selection and choice-of-law clause. (ECF No. 9-5 at 3–4, 13.) On January 27, 2023, Comer and Hagerty entered into an additional "Rights Agreement" that assigned to Comer all rights to "The Appraiser," a program concept created by Comer in which he and other presenters provide inspections, commentary, interviews, evaluations, and/or appraisals of collector vehicles. (ECF No. 1 ¶23; ECF No. 1-1.) Hagerty also agreed to assign to Comer "any rights in or to Mr. Comer's name, likeness, performance, or life rights." (ECF No. 1 ¶24; ECF No. 1-1 at 1.)

In August 2023, Comer learned that Hagerty was using his name (although his name was misspelled as "Colin Cormer") and likeness on its club membership landing page to promote and sell Hagerty Club memberships. (*Id.* ¶¶31–32, 36.) Above Comer's and other classic automative celebrities' and experts' likenesses, Hagerty's webpage included the phrase, "Enjoy regular columns from beloved contributors." (*Id.* ¶38.) Below the likeness, the website advertised benefits and perks of club membership and provided a link to the membership sign-up page. (*Id.* ¶¶39, 46.) The webpage did not contain links to content created by Comer. (*Id.* ¶46.) In January 2024, Comer, through counsel, demanded that Hagerty remove all uses of his name and likeness from its website. (*Id.* ¶40.) Hagerty responded through counsel in February 2024 and, though it denied his allegations, agreed to remove the offending likeness. (*Id.* ¶41.)

On April 19, 2024, Comer sued Hagerty in this Court. (ECF No. 1.) The complaint asserts five claims based on Hagerty's allegedly unauthorized use of Comer's name and likeness after his termination, including violation of his right to privacy under Wisconsin law, common law claims for violation of the right of publicity and unjust enrichment, and federal Lanham Act claims for false endorsement and false advertising. (ECF No. 1 ¶¶53–101.)

## ANALYSIS

Hagerty moves to dismiss the complaint on grounds that all of Comer's claims are barred by the parties' Severance Agreement, which Hagerty attaches to its motion (along with the Confidentiality Agreement and a prior Independent Contractor Agreement). (ECF No. 9-1 at 10–18.) Alternatively, Hagerty asks the Court to dismiss Comer's claims based on an arbitration clause contained in the same agreement, (*id.* at 18–21), or to transfer the case to the Western District of Michigan pursuant to 28 U.S.C. §1404(a), (*id.* at 22–23).

As an initial matter, the Court must determine whether Comer's claims are subject to arbitration. As Hagerty acknowledges, a court may not rule on the merits of claims that are subject to arbitration. (*See* ECF No. 9-1 at 20 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–50 (1986)).) Thus, the Court cannot consider Hagerty's arguments for dismissal under Rule 12(b)(6) if Comer's claims are subject to arbitration.

The arbitrability of a dispute is a matter of federal law governed by the Federal Arbitration Act (FAA), which embodies a "national policy favoring arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, an arbitration clause in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. To achieve enforcement of an arbitration clause, "a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am.*, 466 F.3d at 580 (citation omitted). "[O]nce an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S 574, 582-83 (1960)). In other words, "the party seeking arbitration is entitled to the benefit of the doubt." *Int'l Brotherhood of Elec. Workers Loc. 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014).

Comer's Severance Agreement includes an arbitration clause. It provides:

> 12. <u>Arbitration.</u> The Parties agree that any dispute, controversy, or claim arising out of or related to the Employee's employment with the Employer Group or termination of employment, this Agreement, or any alleged breach of this Agreement shall be governed by the Federal Arbitration Act (FAA) and submitted to and decided by binding arbitration to be held in Grand Traverse County, Michigan. Arbitration shall be administered before the American Arbitration Association in accordance with its rules for employment arbitration and any requirements imposed by Michigan law, except as modified by this Agreement. Each Party shall pay its own costs of arbitration. Any arbitral award determination shall be final and binding on the Parties and may be entered as a judgment in a court of competent jurisdiction.

(ECF No. 9-5 at 13.)

Comer insists the Court should not even consider this provision in resolving the pending motions because the Severance Agreement is not a part of the parties' pleadings. (ECF No. 10 at 15–17, 26.) While Comer is correct that courts generally do not consider material outside the complaint when deciding a motion to dismiss, this rule does not apply in the context of a dispute over whether the parties agreed to arbitrate. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (holding that courts may look outside the complaint when considering a Rule 12(b)(3) motion); *see also Rodgers-Rouzier v. Am. Queen Steamboat Operation Co.*, 104 F.4th 978, 984 (7th Cir. 2024) (noting that the same common-law principles apply to both Rule 12(b)(3) and *forum non conveniens* analysis). Indeed, Comer does not dispute that he signed the Severance Agreement, that it is enforceable, or that it contains an arbitration clause. Accordingly, there is no bar to this Court reviewing the terms of the Severance Agreement in resolving Hagerty's assertion that Comer's claims are subject to arbitration.

The arbitration clause covers all claims "arising out of or related to [Comer's] employment with [Hagerty] or termination of employment, [the Severance Agreement], or any alleged breach of [the Severance Agreement]." (ECF No. 9-5 at 13.) Arbitration agreements using "arising out of or related to" language "have been characterized as extremely broad and capable of an expansive reach." *Kiefer*, 174 F.3d at 909–10 (citing *Elzinga & Volkers, Inc. v. LSSC Corp.*, 47 F.3d 879, 881 (7th Cir. 1995); *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)). "Broad arbitration clauses . . . necessarily create a presumption of arbitrability." *Id.* at 910.

Citing the broad language the parties employed, Hagerty argues that all of Comer's claims relate to his employment and are therefore subject to arbitration. Hagerty contends that Comer's "allegations primarily arise out of his belief that he did not assign certain rights to the use of his name and likeness to Defendant Hagerty during the term of his employment," and thus they are related to his employment with Hagerty. (ECF No. 9-1 at 20–21.) Comer disagrees, insisting that his claims "arise not from his own beliefs about what rights he assigned during employment, but from *Hagerty's actions* after terminating Mr. Comer, which included misleading consumers and attempting to profit from the misuse of Mr. Comer's name and likeness." (ECF No. 10 at 27.) Thus, according to Comer, his claims (and particularly his claims unrelated to publicity rights) do not relate to his employment and are not covered by the arbitration clause. (*Id.*)

Based on the language of the parties' arbitration clause, the Court concludes that Comer's claims relate to his employment with Hagerty, even if they arose after his employment by Hagerty ended. While his complaint invokes several legal theories, each relates to Hagerty's use of his name and likeness on its website following his termination—a use he claims was unauthorized and unlawful. Resolution of those claims will necessarily require interpretation of not only the Rights Agreement that Comer attached to his complaint, but also the broad release of claims contained in the Severance Agreement and the scope and continued applicability of the publicity rights assigned to Hagerty in the Confidentiality Agreement signed during Comer's employment. Determining the propriety of Hagerty's actions will require interpreting agreements that the parties entered into pursuant to Comer's employment with Hagerty and thus *relate* to his employment. Given the "extremely broad" language used in the arbitration agreement, *see Kiefer*, 174 F.3d at 909–10, and the FAA's presumption in favor of arbitration, the Court concludes that Comer's claims all relate to his employment with Hagerty and, therefore, are within the scope of the Severance Agreement's arbitration clause.

The Court will consider Hagerty's request that the Court dismiss the case pursuant to the arbitration clause under the doctrine of *forum non conveniens*. Although Hagerty's invocation of Rule 12(b)(3) finds some support in Seventh Circuit law, the Court of Appeals clarified this summer that this approach has broken down given the Supreme Court's recognition "that forum-selection clauses do not make venue 'improper' within the meaning of Rule 12(b)(3)." *Rodgers-Rouzier*, 104 F.4th at 984 (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)). The same approach applies with respect to arbitration clauses, which are a

"specialized kind of forum-selection clause." *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Srvs., Inc.*, 7 F.4th 555, 560 n.5 (7th Cir. 2021) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). "Common-law doctrines like *forum non conveniens* are the preferred mechanism by which to dismiss a suit brought in the wrong forum, if it cannot be transferred to the right one." *Rodgers-Rouzier*, 104 F.4th at 984 (citing *Atl. Marine*, 571 U.S. at 60). Where, as here, an arbitration clause requires arbitration in a foreign state, Hagerty "should have brought a motion under the forum non conveniens doctrine to enforce it." *See Dr. Robert L. Meinders*, 7 F.4th at 560. The distinction, however, is of little practical significance. *See Rodgers-Rouzier*, 104 F.4th at 984. The same common-law principles concerning the scope of the record, the standard of review, and the Court's power to resolve evidentiary disputes apply under *forum non conveniens* as under Rule 12(b)(3). *Id.* Accordingly, the Court will consider Hagerty's motion as one to dismiss for *forum non conveniens*. *See Dr. Robert L. Meinders*, 7 F.4th at 560–61 (noting that the defendant's improper utilization of Rule 12(b)(3) to enforce arbitration clause did not alter the court's substantive analysis of the issue).

While the decision to enforce a valid forum-selection clause, such as the arbitration agreement at issue, is within the discretion of the Court, it should do so "in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Enforcement of a valid arbitration clause through *forum non conveniens* requires that the case be dismissed. *Dr. Robert L. Meinders*, 7 F.4th at 561 n.7. The Court will therefore exercise its discretion and dismiss this case without prejudice so that the parties may arbitrate their dispute in the venue specified in their arbitration agreement. *Atlantic Marine* creates a strong presumption in favor of enforcement of a valid forum-selection clause and the FAA creates a similar presumption in favor of arbitration. Comer's only argument against enforcement of the arbitration clause is that its scope does not cover his claims. Having concluded that his claims are all within the clause's scope, dismissal is the only appropriate disposition.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Hagerty, Inc.'s Motion to Dismiss, ECF No. 9, is **GRANTED**, and the case is **DISMISSED without prejudice** for *forum non conveniens*. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 2, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge